EDWARD RYAN v. MARIE CONWAY, Appellant.

**Practice.** If the exclusion of testimony is right, when ordered,
1    because a link is wanting, the fact that it is subsequently supplied
     can not make the exclusion wrong.

CROSS-EXAMINATION. There was issue on whether defendant was
     overpaid in final payment. No controversy arose as to the first
2    payment and it appeared that defendant's agent carried it in his
     pocket for some considerable time. *Held*, it was prejudicial error
     to allow him to be examined as to his financial standing.

*Appeal from Clayton District Court.*—HON. W. A.
Hoyt, Judge.

FRIDAY, JANUARY 25, 1895.

Action to recover money overpaid. Judgment for
plaintiff, and the defendant appeals.—*Reversed.*

*Stoneman & Chapin* for appellant.

*D. D. Murphy* for appellee.

Granger, J.—In May, 1892, the plaintiff and defend-
ant entered into a contract for the sale by defendant to
plaintiff of a part of a certain lot in Monona. The con-
tract price of the lot was five hundred dollars. One
hundred dollars was paid at the time of making the
contract, and the remaining four hundred dollars was
to be paid at the delivery of the deed. The deed was
delivered about the tenth of June following, and the
balance of the purchase price was then paid. As to
these particulars there is no dispute. Plaintiff, how-
ever, says that when he made the last payment, by mis-
take he paid five hundred dollars instead of four hun-
dred dollars, and that defendant retains and refuses to

repay the one hundred dollars overpayment, and this action is to recover it. One P. W. Beacom was the agent for defendant in making the sale, and Thomas Conway is the defendant's husband, and at the commencement of the suit they were made parties, and each answered. In the further progress of the suit it was dismissed as to them, so that but the one defendant remains.

I.    The only ultimate fact to be determined on the trial was whether the plaintiff at the time of the final payment counted out to Mrs. Conway four hundred dollars or five hundred dollars; in other words, whether or not there was an overpayment of one hundred dollars. There seems to be no dispute but that, in making up the final payment, there was an allowance of fifteen dollars for taxes, so that only three hundred and eighty-five dollars was to be paid. At the time of the final payment there were present the plaintiff and defendant, P. W. Beacom, and Herman Pufald. The defendant testified that she received three hundred and eighty-five dollars, and without change tied it in her handkerchief, and the same day handed it to Mrs. Beacom, who is a daughter of the defendant. It appears from the testimony of Mrs. Beacom that about two hours after the payment the defendant went to the home of Mrs. Beacom, and handed her the money for the lot as a present. She was asked: "How much money was this your mother gave you?" Answer: "Three hundred and eighty-five dollars." The witness further said: "I made the remark, 'Is this all?' and they said, 'Yes; there were fifteen dollars taken out as taxes.'" On motion of plaintiff the court struck out

the answer as incompetent, irrelevant, and immaterial, of which complaint is made. It seems to us the ruling was right. At the time of the ruling there was no competent evidence to show the identity of the money in amount with that received or put in the handkerchief. It was afterwards that the defendant testified as to giving the money she received, unchanged, to her daughter, in a handkerchief. Had the question then been asked as to the amount received, the situation would have been different. The changed condition as to the evidence after the ruling would not render it erroneous.

II. P. W. Beacom was a witness for the defendant, and examined as to the facts about the sale and payment. On cross-examination he was asked the following questions, which he answered under objections: "Q. You and your wife owned and occupied that lot some time previous to that time yourselves, didn't you? A. Yes, sir. Q. And, after burning down in Monona, you conveyed it—you and your wife—to Mrs. Conway, didn't you? A. Yes, sir. Q. You were in somewhat embarrassed circumstances at that time, were you not? A. No, I was not. Q. Didn't you have a pretty hard time paying your debts about that time? A. Yes, sir; I was rather pinched at that time. Q. There were suits commenced to set that deed aside, weren't there? A. Not that I know of. Q. Weren't you served with notices to set that deed aside? A. No, sir. Q. When you hid behind the trees in Luana, and the sheriff found you? A. I never hid behind the trees at any time, and I want you to understand that you can't get anything of that kind. Q. You were embarrassed at that time? A. No, not at that time. Q. I mean financially. A. No, sir. Q. You had a hard time to pay your debts? A. Yes, sir." Nothing in the record justifies this

course of examination. It was as to matters entirely disconnected from and foreign to the issue to be tried. There is a claim that when the question was asked Beacom was a nominal party, but that fact does not aid appellee. It was an inquiry into an entirely immaterial matter, and without the range of a proper cross-examination. The issue was only as to the amount of money paid on a particular day. The title to the lot was not in question. The line of examination could not properly disclose a discrediting circumstance, or bear upon the fact at issue. It is said that there was no prejudice, because the answers were favorable to the witness. The inference arising from so wide a departure from the recognized rule is that the purpose was to induce prejudice in the minds of the jury against the witness. It appears in evidence that the one hundred dollars which he received when the contract was made he kept in his pocket till Mrs. Conway made a present of the other money to his wife, when he also handed over to her (his wife) the one hundred dollars. It is urged that this evidence showing his poverty tends to contradict his statement that he had the money in his pocket for so long a time. But the facts as to the one hundred dollars are not in dispute, and where it was kept, or by whom, could in no way bear on the question of how much was paid as a final payment. The arguments show the immateriality of the evidence. We may presume prejudice from the course of procedure and the subject-matter introduced to the minds of the jury. The judgment is *reversed*.